## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

TYRONE STURDIVANT,

           Petitioner,

vs.

UNITED STATES OF AMERICA,

           Respondent.

No. C12-3085-LTS
(No. CR 05-3009-DEO)

**MEMORANDUM OPINION AND ORDER ON PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT A SENTENCE**

---

The matter before me is Tyrone Sturdivant's November 5, 2012, Motion (Doc. No. 1) Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, which is revised and updated by Sturdivant's February 4, 2015, Merits Brief (Doc. No. 76) Related to Original 28 U.S.C. § 2255 Motion and Petitioner's December 21, 2015, Reply (Doc. No. 91) to Government's Response and Memorandum in Support of Government's Response to Defendant's Motion Under 28 U.S.C. § 2255. Sturdivant reincorporates the claims in his § 2255 Motion into his merits brief and clarifies each claim with sub-claims, largely alleging ineffective assistance of counsel. Additionally, Sturdivant claims constitutional violations of his Fifth and Sixth Amendment rights, sentencing guidelines errors and cumulative error.

## TABLE OF CONTENTS

I.    **INTRODUCTION**..............................................................................3
    A.    *Factual Background and Criminal Proceedings*............................3
        1.    *Summary of trial and sentencing proceedings*.......................4
        2.    *Summary of appellate proceedings*...................................6
            a.    *Sturdivant's first appeal* .........................................6

|  |  |  | b. | Remand and resentencing ......................................... 7 |
|  |  |  | c. | Sturdivant's second appeal ...................................... 8 |
|  |  |  | d. | Amendment 750, crack-to-cocaine ratio sentencing disparity correction ............................... 10 |
|  | B. |  |  | Section 2255 Proceedings ..................................................... 10 |

II. **LEGAL ANALYSIS** ................................................................ 11

    A.   *Standards for Section 2255 Relief* ..................................... 12

        1.   Standards for proof of ineffective assistance of counsel claims ................................................. 14

            a.   The "deficiency" prong of Strickland........................ 15

            b.   The "prejudicial" prong of Strickland ...................... 16

    B.   *Sturdivant's Ineffective Assistance of Counsel Claims* ................... 16

        1.   Martha McMinn (pre-trial counsel) ....................... 17

            a.   Alleged failure of counsel to advise Sturdivant of the right to plead guilty ................................... 17

        2.   Shelley Horak (trial counsel)........................................ 18

            a.   Alleged failure to ensure Sturdivant had adequate access to discovery file and failure to adequately advise Sturdivant of his right to plead guilty ........................................................ 18

                i.   Jencks Act and Brady materials ..................... 18

                ii.   Sturdivant's access to discovery materials.............................................. 19

            b.   Alleged failure to file motion to sever case from co-defendants ................................................. 22

            c.   Alleged failure to correct erroneous/defective jury instructions numbers 6, 9, and 14 ...................... 24

            d.   Alleged failure to object to prosecutorial misconduct during trial ....................................... 28

                i.   Alleged failure to object to perjured testimony of Travis Ulrich ............................. 28

                ii.   "Trial counsel agreed to prosecutorial misconduct" by permitting "introduction of Bremer County, Iowa evidence"................................................. 29

            e.   Alleged failure to inform Sturdivant of error in unanimous jury verdict after contact with jurors ............................................................ 30

        3.   Robert Sikma (first sentencing/appellate counsel) ................. 30

            a.   Alleged failure of to ensure adequate access to discovery file ...................................................... 30

|  |  | b. | Alleged failure to conduct an adequate investigation into prior offenses in Michigan, Illinois and Iowa | 30 |
|  |  | 4. | Eric W. Butts (Second Appellate Counsel) | 32 |
|  |  | 5. | Stefanie Martinez (first resentencing counsel) | 33 |
|  |  | a. | Alleged failure to ensure adequate access to discovery file | 33 |
|  |  | 6. | Michael Smart (second resentencing counsel) | 33 |
|  | C. | Cumulative Error Review | | 34 |
|  | D. | Constitutional Claims | | 34 |
|  |  | 1. | Sturdivant's sentence to life under §§ 841(b)(1)(A), 846, and 851 violates the Fifth Amendment Due Process and Equal Protection Clauses | 34 |
|  |  | 2. | Alleyne Issue | 35 |
|  |  | 3. | Section 851 Enhancement | 36 |
|  |  | 4. | Tenth Amendment Violation | 37 |
|  | E. | Certificate of Appealability | | 37 |
| III. | CONCLUSION | | | 38 |

## I.   INTRODUCTION

### A.   Factual Background and Criminal Proceedings

Sturdivant was charged in the first three counts of a thirteen-count Indictment (the remaining counts were directed against three codefendants). Presentence Investigation Report (Cr. Doc. No. 260) ("PSIR") at 1. Count 1 charged Sturdivant with conspiracy to manufacture and distribute 50 grams or more of cocaine base, commonly called "crack cocaine," and conspiracy to distribute cocaine salt, more commonly called "powder cocaine," both Schedule II controlled substances, in violation of Title 21, United States Code ("U.S.C."), §§ 841(a)(1), (b)(1)(A), (b)(1)(C) and 846. PSIR 2. Counts 2 and 3 charged Sturdivant with distribution of powder cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). PSIR 3, 4.

### 1. *Summary of trial and sentencing proceedings*

The first attorney to represent Sturdivant in his federal criminal case was Martha McMinn, who was appointed from the court's Criminal Justice Act ("CJA") panel on January 27, 2005. On March 20, 2005, McMinn moved to withdraw and the motion was granted the following day. On March 22, 2005, a second attorney, Pamela Wingert, was appointed from the court's CJA panel. Wingert filed a motion to withdraw due to a conflict of interest on March 30, 2005. The motion was granted the same day. Sturdivant's third attorney, Shelley Horak,[1] was appointed April 4, 2005, and represented Sturdivant through trial.

Sturdivant was tried with his three codefendants. A jury trial commenced on June 30, 2005, and resulted in a guilty verdict on July 7, 2005, as to Counts 1, 2, and 3.[2] Cr. Doc. No. 98. A recurring issue throughout trial was defense counsels' repeated objections that the Assistant United States Attorney (AUSA) had failed to provide required discovery materials regarding certain witnesses' prior testimony or criminal records. *See* Trial Tr. 55-58, 168, 208 339-57, 402-16, 440-43, 490, 568, 604, 908-12, 971, 1042-53, 1119-26, 1195 (Cr. Doc. Nos. 111, 123).

On August 9, 2005, Horak filed a Motion for a Judgment of Acquittal or New Trial. Cr. Doc. No. 112. On October 4, 2005, at Sturdivant's direction, Horak moved to withdraw as Sturdivant's counsel before his sentencing. Cr. Doc. No. 126. The motion was granted the following day, after a hearing. Cr. Doc. No. 130. Robert Sikma was then appointed to represent Sturdivant. Sikma represented Sturdivant at the November 23, 2005, hearing on the Motion for a New Trial. On December 12, 2005,

---

[1] Horak is referred to as both Shelley Goff and Shelley Horak throughout the various filings. I will refer to her as Horak, which was her last name while she served as Sturdivant's attorney, for the sake of consistency and clarity.

[2] The Honorable Donald E. O'Brien, then a Senior United States District Judge, presided.

the court denied Sturdivant's Motions for a Judgment of Acquittal and New Trial. Cr. Doc. No. 155.

Sikma filed a sentencing memorandum on behalf of Sturdivant on March 28, 2006. Cr. Doc. No. 192. On April 6, 2006, Sikma also filed an objection to the Government's Notice of Prior Convictions Pursuant to 21 U.S.C. § 851.[3] Cr. Doc. No. 196. Sikma's objections were directed at two of the prior convictions set forth in the § 851 notice. With regard to a prior conviction in Bremer County, Iowa, Sikma argued that it "cannot be separated from the case at bar because it was specifically used as evidence of acts in the conspiracy." *Id.* at 1. Sikma also pointed out that the § 851 notice detailed a conviction in Van Buren County, Missouri, when in fact, Sturdivant had been convicted in Van Buren County, *Michigan*. *Id.* at 1-2. In response to Sikma's "Michigan-not-Missouri" argument, the Government filed an amended § 851 notice on April 6, 2006.

Sturdivant's sentencing hearing was scheduled to take place on April 6, 2006, but was continued until the following day to adequately address the last-minute filings. Cr. Doc. No. 199. The sentencing hearing was further continued after the court directed the parties to brief additional issues. Cr. Doc. No. 201. Another sentencing hearing was held on June 8, 2006, but the court granted additional time for the parties to attempt to work out an agreement. Cr. Doc. No. 242.

According to Sturdivant's PSIR, he had a Criminal History Category ("CHC") of VI and a Base Offense Level of 34, but because Sturdivant qualified as a Career Offender, his Base Offense Level was increased to 37. PSIR 9. The PSIR indicates that even if his criminal history points did not qualify him for a CHC VI (which they did), his CHC would have been enhanced to VI because Sturdivant met the criteria of a Career Criminal.

---

[3] The Government, before trial or before entry of a guilty plea, must file an information stating the convictions to be relied on in order to obtain a § 851 sentencing enhancement. 21 U.S.C. § 851(a); *United States v. Curiale*, 390 F.3d 1075, 1076 (8th Cir. 2004).

Under the 2005 United States Sentencing Guidelines ("USSG"), Sturdivant had an advisory guideline range of 360 months to life.

On October 26, 2006, the court sentenced Sturdivant to 348 months of imprisonment on Counts 1, 2 and 3, to be served concurrently. Cr. Doc. No. 259. The court concluded that the Government could not use Sturdivant's Bremer County, Iowa, conviction for a sentencing enhancement under § 851 because the same conduct was used to convict him of the charged conspiracy offense. The court also held that the Government could not use the Van Buren, Michigan, conviction as the basis for a § 851 enhancement because the notice referenced Missouri, not Michigan. Cr. Doc. No. 257. Sturdivant would have faced a mandatory life sentence if any two of his three prior convictions qualified. Because Sturdivant did not contest the applicability of a prior Lake County, Illinois, conviction, he would have faced a mandatory life sentence if either the Bremer County, Iowa, conviction or the Van Buren County, Michigan, conviction qualified under § 851.

### 2.    *Summary of appellate proceedings*
### a.    *Sturdivant's first appeal*

Sturdivant appealed the denial of his Motions for Acquittal and New Trial to the Eighth Circuit Court of Appeals. Cr. Doc. No. 287. The Government cross-appealed the denial of the § 851 sentencing enhancement. In the course of this appeal, Sturdivant alleged the Government's use of convicted confidential informants ("CIs"), who were unsupervised and who controlled the investigation while carrying on criminal conduct, corrupted the integrity of the Government's evidence to the extent that he was entitled to a judgment of acquittal. His arguments were based on: (1) the task force did not maintain written notes of their initial meetings with CIs; (2) the CIs worked with little or no supervision; (3) the task force did only a cursory search of the CIs before and after the controlled buys; (4) one of the CIs testified that he purchased drugs for himself while

working for the task force; (5) one of the CIs took two unsupervised trips out of state; and (6) the task force never tested the CIs for drugs.

Additionally, Sturdivant claimed the Government's numerous violations of discovery orders, coupled with the lack of credibility of the Government's case, required a judgment of acquittal. Specifically, Sturdivant argued that it was an abuse of discretion for the trial court to: (1) not strike the testimony of Heather Servantez; (2) not inform the jury that Brian Davis, Jr. was an accused sex offender; and (3) admit the testimony of Travis Ulrich. Sturdivant also argued that the trial court should have granted a new trial because of numerous violations of discovery rules, the Jencks Act, and the flagrant misuse of criminal witnesses. Specifically, Sturdivant contended that suppression of the witnesses' testimony was required by the Jencks Act. He alleged that he did not receive Travis Ulrich's immunity agreement, the pre-trial record of Brian Davis, Sr.'s, unsupervised activities, Officer David Hepperly's report of his initial meeting with Brian Davis, Jr., or a police interview report of Heather Servantez.

The Eighth Circuit found all of these arguments unavailing. *United States v. Sturdivant*, 513 F.3d 795 (8th Cir. 2008) (*Sturdivant I*). However, the court agreed with the Government that the district court erred in refusing to apply a § 851 enhancement based on the "Michigan-not-Missouri" mistake. The court held that the Government's amendment of the § 851 notice prior to sentencing cured the mistake and, therefore, that the district court should have considered the Michigan conviction. *Id*. at 804. As such, the court remanded the case for resentencing. *Id.*

### b. *Remand and resentencing*

On remand, the district court held a hearing pursuant to 21 U.S.C. § 851(c) to address Sturdivant's s Denial of Prior Conviction. Cr. Doc. No. 364. The court found that the Government proved beyond a reasonable doubt that Sturdivant was the individual convicted of the Lake County, Illinois, and Van Buren County, Michigan, felony drug

offenses. After a resentencing hearing on May 3, 2010, Sturdivant's sentence was amended to a term of life because of the two prior felony drug offenses. Cr. Doc. Nos. 375, 376. The entire sentence, as amended, consisted of life on Count 1, 360 months on Count 2 and 360 months on Count 3, to be served concurrently.

### c. *Sturdivant's second appeal*

Through attorney Michael Smart, Sturdivant filed a notice of appeal on May 17, 2010. Cr. Doc. No. 378. On appeal, Sturdivant's counsel moved to withdraw and filed a brief under *Anders v. California*, 386 U.S. 738 (1967),[4] in which he argued that imposing the statutory mandatory minimum in 21 U.S.C. § 841(b)(1)(A) (amended Aug. 3, 2010) denied Sturdivant due process and equal protection because of the crack-to-powder ratio in the statute. In addition, Sturdivant raised a number of *pro se* issues concerning the hearing that had been held on remand to address his argument that he was not the person convicted in the two prior felony cases.

The Eighth Circuit rejected the argument advanced pursuant to *Anders* and noted that it had reviewed the record independently and found no nonfrivolous issues for appeal. *United States v. Sturdivant*, 420 Fed. Appx. 651 (8th Cir. July 8, 2011) (unpublished) (*Sturdivant II*). With regard to Sturdivant's *pro se* arguments, the court stated:

> Because Sturdivant raised no identity-based objections at his first sentencing hearing or during the first appeal, he waived the ability to pursue that argument on remand. This court also rejects Sturdivant's contention that the mandatory minimum sentence is preempted or overridden by 18 U.S.C. § 3551-3559. The Fair Sentencing Act of 2010 does not affect his sentence.

---

[4] Counsel is required to file a notice of appeal whenever requested to do so by a client. *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). *Anders* resolves the tension between a defense lawyer's duty to be a zealous advocate and his or her duty, as an officer of the court, not to present frivolous arguments. In an *Anders* brief, counsel must refer "to anything in the record that might arguably support the appeal." *Anders*, 386 U.S. at 744; *see also* Alan DuBois & Brett Sweitzer, *Anders Briefs & Other Issues for Appeal*, available at https://www.fd.org/docs/select-topics---appeals/anders_briefs.pdf.

Sturdivant claims the district court erred in admitting certain evidence at his sentencing hearing, including alleged hearsay testimony of records officers and irrelevant documentary evidence. The district court did not abuse its wide discretion in admitting documents and the testimony of the records officers, or clearly err in finding the facts of the two prior convictions.

Sturdivant also claims the district court was not impartial and favored the government by continuing the sentencing hearing, requesting the government paginate its exhibits, and questioning witnesses. To the contrary, the average person on the street who knows all the relevant facts of this case would not question the district court's impartiality. The sentencing judge's routine trial administration did not exhibit bias, and none of the judge's acts rose to the level of advocacy.

At the original sentencing, the district court imposed a sentence of three concurrent 348-month terms. The government's (successful) appeal disputed only the felony-drug-conviction enhancement to Count 1, authorized by 21 U.S.C. § 841(b)(1)(A)(viii). On remand, the district court, after sentencing Sturdivant to life in prison on Count 1, proceeded to impose concurrent 360-month terms on Counts 2 and 3. This court's remand necessarily permitted resentencing only on Count 1. The district court erred in resentencing Sturdivant on Counts 2 and 3, and this court reinstates the original sentences for those counts: concurrent terms of 348 months in prison on each count.

This court vacates the sentences imposed on Counts 2 and 3, reinstating the original concurrent 348-month sentences on those counts. In all other respects, we affirm. Counsel's motion to withdraw is granted, and Sturdivant's pending motions are denied.

*Id.* (quotations and citations omitted) (parentheticals in original). On August 12, 2011, the Eighth Circuit denied Sturdivant's petition for rehearing. Cr. Doc. No. 406. On December 12, 2011, the Supreme Court denied Sturdivant's petition for a writ of certiorari. Cr. Doc. No. 411.

### d.    *Amendment 750, crack-to-cocaine ratio sentencing disparity correction*

On May 8, 2012, the district court, *sua sponte*, issued an order noting that Amendment 750[5] to the USSG could not be applied retroactively in Sturdivant's case, because Sturdivant had already been sentenced to the statutory mandatory minimum sentence.  Cr. Doc. No. 415.  The district court concluded that it had already given Sturdivant the shortest sentence that it lawfully could.  *Id.*  On May 14, 2012, Sturdivant filed a *pro se* Notice of Appeal from the court's denial of a reduction of sentence pursuant to Amendment 750.  On May 17, 2012, the Eighth Circuit summarily affirmed the judgment of the district court.  Cr. Doc. No. 419.

### B.    *Section 2255 Proceedings*

Sturdivant filed his § 2255 Motion (Doc. No. 1) on November 5, 2012.  He alleges ineffective assistance of counsel as against seven attorneys, constitutional violations of his Fifth and Sixth Amendment rights, sentencing guidelines errors and cumulative error. On December 10, 2012, Christopher Cooklin was the first attorney appointed to represent Sturdivant as § 2255 counsel.  On March 28, 2013, Cooklin moved to withdraw and the motion was granted the same day.  Doc Nos. 16, 17.

On March 29, 2013, attorney Lynn Rose was appointed to represent Sturdivant. On February 27, 2014, Sturdivant filed a *pro se* Motion for Appointment of New Attorney or Adequate Access to Discovery File.  Doc. No. 46.  Rose responded that she and Sturdivant had been unable to reach agreement on which issues should be briefed for the court as meritorious.  Doc. No. 47.  On April 22, 2014, Sturdivant filed a *pro se* Renewed Motion for Appointment of New Counsel or Adequate Access to Discovery

---

[5] Amendment 750 (Parts A and C) amended USSG § 1B1.10 to reduce the term of imprisonment as a result of amended guideline ranges to cocaine base ("crack") offenses.  However, defendants subject to statutorily required minimum sentences are not entitled to a reduction in sentences, because the mandatory minimum sentences trump guidelines ranges.  *See generally United States v. Moore*, 734 F.3d 836 (8th Cir. 2013).

File, alleging that Rose was unable or unwilling to devote time to the issues Sturdivant wanted to address. Doc. No. 51. On May 2, 2014, Rose filed a Motion to Withdraw based on Sturdivant's request, noting that Sturdivant continued to disagree with Rose as to which claims had potential merit. Doc. No. 53. On May 6, 2014, I granted Rose's Motion to Withdraw and Rockne Cole was appointed to represent Sturdivant. Doc. No. 54. On October 23, 2014, Sturdivant filed a *pro se* Motion to Preserve Original § 2255 Issues with Supplemental Motion to Amend § 2255 and Motion to Proceed Pro Se/Self-Represent under 28 U.S.C. § 1654 (docketed as a Motion for Appointment of a New Attorney). Doc. No. 68. On October 30, 2014, Cole moved to withdraw as Sturdivant's attorney, stating that Sturdivant had identified approximately 76 issues and was unwilling to reduce the number of claims presented to the court to less than 36. Doc. No. 70.

I granted Cole's Motion to Withdraw and Sturdivant's Motion to Proceed *Pro Se* on October 31, 2014. Doc. No. 71. Sturdivant then filed his revised Motion to Vacate/Set Aside/Correct Sentence Pursuant to 28 U.S.C. § 2255 on February 4, 2015. After obtaining several extensions, the United States responded on October 16, 2015. Doc. No. 88. On December 21, 2015, Sturdivant filed his Reply to the Response of the United States. On February 17, 2016, this case was reassigned to me.[6]

## II.    *LEGAL ANALYSIS*

I begin my analysis with a summary of the standards generally applicable to Sturdivant's claims for § 2255 relief. I will then address the numerous issues raised in Sturdivant's § 2255 petition and merits brief, which include claims for ineffective assistance of counsel against six of the ten attorneys appointed to represented Sturdivant through his trial and appeals process, and an unnamed Michigan attorney who represented Sturdivant in a 1991 case resulting in a conviction that served as a basis for a § 851

---

[6] My prior orders were entered while I was a United States Magistrate Judge. I was appointed as a United States District Judge on February 12, 2016.

enhancement. To the extent possible, my analysis will track the arguments in Sturdivant's merits brief, wherein he has reincorporated and augmented the claims in his petition. Sturdivant's claims may be broadly grouped into claims for: (1) counsel's failure to grant Sturdivant adequate access to discovery, which is closely tied to the failure to negotiate a favorable plea deal; (2) failure to adequately investigate; (3) failure to object to prosecutorial misconduct; and (4) failure to sever trial. Sturdivant also alleges "cumulative error," constitutional claims, and *Alleyne* claims. Additional factual background is included in the subsections below.

### A. Standards for Section 2255 Relief

Section 2255 of Title 28 of the United States Code provides four general grounds for relief:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate or correct the sentence.

28 U.S.C. § 2255; *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post-conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "[is] intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman*

*v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993)).

One "well established principle" of § 2255 law is that "'[i]ssues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255.'" *Theus v. United States*, 611 F.3d 441, 449 (8th Cir. 2010) (quoting *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001)); *Bear Stops*, 339 F.3d at 780. One exception to that principle arises when there is a "miscarriage of justice," although the Eighth Circuit Court of Appeals has "recognized such an exception only when [petitioners] have produced convincing new evidence of actual innocence," and the Supreme Court has not extended the exception beyond situations involving actual innocence. *Wiley*, 245 F.3d at 752 (noting that "the Court has emphasized the narrowness of the exception and has expressed its desire that it remain 'rare' and available only in the 'extraordinary case.'") (citations omitted). Just as § 2255 may not be used to relitigate issues raised and decided on direct appeal, it also ordinarily "is not available to correct errors which could have been raised at trial or on direct appeal." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in Habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) (internal quotations and citations omitted). "Cause and prejudice" to resuscitate a procedurally defaulted claim may include ineffective assistance of counsel, as defined by the *Strickland*[7] test, discussed below. *Theus*, 611 F.3d at 449. Indeed, *Strickland* claims are not procedurally defaulted when brought for the first time pursuant to § 2255 because of the advantages that form of proceedings for hearing such claims. *Massaro v. United States*, 538 U.S. 500 (2003). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not

---

[7] *Strickland v. Washington*, 466 U.S. 668 (1984).

reasonably available to counsel" may constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). The "actual innocence" that may overcome procedural default or allow relitigation of a claim was raised and rejected on direct appeal is a demonstration "'that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) (quoting *Bousley*, 523 U.S. at 623).

### 1. *Standards for proof of ineffective assistance of counsel claims*

Sturdivant's claims for § 2255 relief are largely claims for ineffective assistance of counsel. Such claims are analyzed through the "deficiency" and "prejudicial" prongs of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, (1984). As the Eighth Circuit has explained,

> "Normally, in order to succeed on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was 'deficient' and that the 'deficient performance prejudiced the defense.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir.2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)).

*Sweeney v. United States*, 766 F.3d 857, 859-60 (8th Cir. 2014). Since a movant must show both deficient performance and prejudicial effect, a court reviewing ineffective assistance claims need only address one prong if either fails. *See Williams v. United States* 452 F.3d 1009, 1014 (8th Cir. 2006). Additionally, each individual claim of ineffective assistance "must rise or fall on its own merits," meaning that courts should not take into account the "cumulative effect of trial counsel's errors in determining Strickland prejudice." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006); *United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir. 2008) ("[W]e have repeatedly rejected

the cumulative error theory of post-conviction relief."). These two prongs, deficiency and prejudice, are expanded upon below.

### a. The "deficiency" prong of Strickland

"Matters of trial strategy are generally entrusted to the professional discretion of counsel and they are 'virtually unchallengeable' in § 2255 proceedings." *Mueller v. United States*, No. 4:13-CV-312 CAS, *22, 2016 WL 898883, at *7 (E.D. Mo. Mar. 9, 2016) (citing *Morelos v. United States*, 709 F.3d 1246, 1250 (8th Cir. 2013)). "Deficient" performance is performance that falls "'below an objective standard of reasonableness,'" *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)), that is, conduct that failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney. *Strickland*, 466 U.S. 668, 687 (1984); *Donnell v. United States*, 765 F.3d 817, 821 (8th Cir. 2014). Thus, "[c]ounsel is unconstitutionally *in*effective if his performance is [] deficient, meaning his errors are 'so serious' that he no longer functions as 'counsel. . .'" *Maryland v. James Kulbicki*, 136 S. Ct. 2, 3 (2015) (emphasis in original) (quoting *Strickland*, 466 U.S. at 687).

Counsel is not constitutionally ineffective because of the failure to raise a "relatively sophisticated" and "counter-intuitive" argument. *Donnell v. United States*, 765 F.3d 817, 821 (8th Cir. 2014); *Pierce v. United States*, 686 F.3d 529, 534 (8th Cir. 2012). "In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to counsel's perspective at the time investigative decisions are made and by giving a heavy measure of deference to counsel's judgments." *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) (internal citations omitted). "[F]ailing to present mitigating evidence may be ineffective assistance if, due to inadequate trial preparation and investigation, 'counsel has through neglect failed to discover such evidence.'" *Kenley v. Armontrout*, 937 F.2d 1298, 1304 (8th Cir.1991)

(quoting *Laws v. Armontrout*, 863 F.2d 1377, 1385 (8th Cir.1988)). "[S]trategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel." *Holder v. United States*, 721 F.3d 979, 994 (8th Cir. 2013).

### b. The "prejudicial" prong of Strickland

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 132 S. Ct. at 1384 (quoting *Strickland*, 466 U.S. at 694). The Court has explained more specifically that a "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." [*Strickland*, 466 U.S. at 694]. That requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 104 (2011). To assess the probability of a different outcome, the court must consider "the totality of the available mitigation evidence – both that adduced at trial, and the evidence adduced in the habeas proceeding – and reweigh it against the evidence in aggravation." *Porter v. McCollum*, 558 U.S. 30, 41 (2009). Ultimately, a showing of "prejudice" requires counsel's errors to be "'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 562 U.S. at 103-05 (quoting *Strickland*, 466 U.S. at 687). I turn now to consider Sturdivant's "ineffective assistance of counsel" claims considering the standard of prejudice under *Strickland*.

### B. Sturdivant's Ineffective Assistance of Counsel Claims

Sturdivant alleges roughly thirty-nine grounds for § 2255 relief. He was appointed several attorneys to assist in the preparation and filing of his § 2255 petition. However, his various attorneys noted that they could not reach an agreement with Sturdivant as to how many legally-meritorious bases for § 2255 relief could be presented to the court. As such, Sturdivant proceeded *pro se*.

Pro se motions are to be construed liberally. *See Baldwin v. Credit Based Asset Servicing & Securitization*, 516, F.3d 734, 738 (8th Cir. 2008); *Miller v. Norris*, 247 F.3d 736, 739 (8th Cir. 2001). The Eighth Circuit has noted that, "'When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.'" *Rey v. United States*, 786 F.3d 1089, 1091 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004)). Because Sturdivant's claims are so numerous and often "not pleaded with legal nicety," I will summarize my understanding of the essence of each claim and then address it within the proper legal framework.

### 1.   *Martha McMinn (pre-trial counsel)*

#### a.   *Alleged failure of counsel to advise Sturdivant of the right to plead guilty*

Sturdivant argues that his pre-trial counsel, McMinn, did not advise him of his right to plead guilty or negotiate a favorable plea deal and that this failure resulted in the filing of the § 851 sentencing enhancement and, ultimately, a life sentence. Pet. Br. 2. In essence, Sturdivant contends that if he had pleaded guilty, the § 851 enhancement would not have been filed.

The Government filed its information to establish a prior conviction for the purposes of the § 851 enhancement on May 9, 2005. Cr. Doc. No. 51. McMinn, withdrew as Sturdivant's attorney over a month earlier, on March 21, 2005. Cr. Doc. No. 38, 39. Sturdivant points to no evidence to support his argument that McMinn had the opportunity to negotiate a plea bargain that would have resulted in a more favorable sentence than the one he received. Therefore, I find that Sturdivant has failed to show that McMinn's performance was deficient or that her alleged failure to advise him of his right to plead guilty affected his sentence.

## 2. **Shelley Horak (trial counsel)**

### a. *Alleged failure to ensure Sturdivant had adequate access to discovery file and failure to adequately advise Sturdivant of his right to plead guilty*

#### i. *Jencks Act and* **Brady** *materials*

"The Jencks Act requires that the prosecutor disclose any statement of a witness in the possession of the United States which relates to the subject testified by the witness on direct examination." *United States v. Stroud*, 673 F.3d 854, 863 (8th Cir. 2012) (quoting *United States v. Douglas*, 964 F.2d 738, 741 (8th Cir. 1992)). A "statement" is defined as "(1) a written statement made by said witness and signed or otherwise adopted or approved by him; (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury." 18 U.S.C. § 3500(e). "If the United States elects not to comply . . . , the court shall strike from the record the testimony of the witness  . . . unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared." 18 U.S.C. § 3500(d). Both bad faith by the Government and prejudice to the defendant must be shown to overturn a conviction based on Jencks Act violations. *United States v. Vieth*, 397 F.3d 615, 619 (8th Cir. 2005).

Under *Brady v. Maryland*, 373 U.S. 83, 85 (1963), a prosecutor must disclose any evidence favorable to the accused and material either to guilt or punishment. *Brady* is violated if three requirements are met: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Morales v. Ault*, 476 F.3d 545, 554 (8th Cir. 2007) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, "the underlying question is whether the verdict is worthy of confidence." *United States v. Tyndall*, 521 F.3d 877, 882 (8th Cir.

2008). A mid-trial disclosure violates *Brady* only if it comes too late for the defense to make use of it. *Id.* (citing *United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005)).

Here, the Eighth Circuit considered and rejected Sturdivant's various Jencks Act and *Brady* arguments on direct appeal. *Sturdivant I*, 513 F.3d at 803. As such, those issues cannot be relitigated in this collateral proceeding. *Theus*, 611 F.3d at 449; *Bear Stops*, 339 F.3d at 780. Sturdivant's argument that Horak was constitutionally ineffective for failing to obtain Jencks and *Brady* materials must be denied.

### ii.    *Sturdivant's access to discovery materials*

Sturdivant makes numerous arguments about discovery materials. Generally, he contends that he and Horak had minimal contact and that he had limited access to the discovery file. He claims Horak never showed him the notice that was filed to establish prior convictions supporting the § 851 enhancement. Pet. Br. 4. He also argues that Horak should have requested his criminal history from the Government and researched it thoroughly to determine the accuracy of the § 851 notice. He further argues that Horak's discovery of the inaccuracy regarding his Van Buren, Michigan, offense would have enabled her to negotiate a favorable plea deal. Pet. Br. 6-7.

Sturdivant also alleges that careful inspection of the grand jury transcripts would have revealed inconsistencies in the trial testimony of Travis Ulrich. Pet. Br. 8. Sturdivant argues that these inconsistencies show that the AUSA instructed Ulrich to commit perjury. Alternatively, he contends that if he would have been granted access to Ulrich's grand jury testimony, he would have been more inclined to plead guilty instead of going to trial and that this would have caused the Government to forego filing the § 851 enhancement. Pet. Br. 8-9.

Sturdivant also argues that Horak's failure to show him all communications between Horak and the AUSA "symboliz[ed] an attempt to keep ex parte communications

from him." Pet. Br. 9. Sturdivant alleges that if he had been able to review all communications between Horak and the AUSA, "he could have negotiated a favorable plea deal for a reasonable sentence, instead of going to trial based on lack of sound judgment by counsel. . ." *Id.*

Sturdivant argues that Horak's failure to enable him to review the controlled-buy money logs and controlled-buy photos similarly deprived him of the knowledge of the strength of the case against him, which would have encouraged him to have pleaded guilty. Pet. Br. 10. This, Sturdivant presumes, would have resulted in a plea deal that was more favorable than the sentence he received. *Id.* Sturdivant summarizes his argument regarding his lack of access to discovery material in stating:

> Petitioner was never adequately presented review of discovery file only partial discussions by trial counsel. Trial counsel never advised petitioner as to all the facts and law relevant to his decision to plead guilty or go to trial. Trial counsel never discussed all aspects of the case, options or sentencing possibilities. Petitioner was basically left to try to maneuver through pre-trial process without effective assistance of counsel.

Pet. Br. 13. Sturdivant explains why he believes this allegedly-deficient conduct had a prejudicial effect on his sentence at trial:

> Failure of trial counsel to prepare a full list of the discovery material in her file & government caused petitioner to proceed to trial unprepared and without full knowledge of the true evidence against him. Had trial counsel g[iven] petitioner full access or review of [ ] discovery material in her possession, petitioner could have weighed the advantage [ ] and disadvantage of going to trial or deciding to plead guilty and negotiate a reasonable sentence instead of receiving a life sentence because of trial counsel restriction of discovery material.

Pet. Br. 12.

Sturdivant goes on to argue that because he did not have access to all discovery materials, he could not appreciate the amount and quality of evidence that would be used to convict him. Instead, he contends Horak left him with the impression that he would be found not guilty of conspiracy to manufacture and distribute 50 grams or more of

cocaine base. Pet. Br. 18. Throughout this section of Sturdivant's brief, he reiterates his after-the-fact claim that he would have pleaded guilty if he had known the nature and extent of evidence that the Government used to convict him and that he would have then received a more-favorable sentence. Pet. Br. 11-19.

Horak has submitted an affidavit (Doc. No. 88-2) in which she states "the Stipulated Discovery Order entered on 2/1/2005 prohibited making copies of the government's discovery file. I was also prohibited from leaving copies of any documents I might be given by the government or any of my notes concerning th[ose] documents with the Defendant." Horak Aff. 1. Horak further states that she reviewed her discovery file findings with Sturdivant on several occasions. *Id.* at 2. Horak reports that she met with Sturdivant at least twice to review the information contained in the discovery file while he was incarcerated at the Fort Dodge Correctional Facility, including one meeting that lasted several hours, and again while he was incarcerated at the Woodbury County Jail. *Id.*

It is Sturdivant's burden to show a reasonable probability that, but for Horak's alleged errors, the result of the proceeding would have been different. Sturdivant has failed to make such a showing. There is no evidence in the record suggesting that the Government would have refrained from filing a § 851 enhancement as part of a plea agreement. Indeed, there is no evidence that the Government ever presented a plea proposal at all, let alone one that would have avoided such an enhancement.

Sturdivant relies on *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012), to substantiate his claim that counsel was deficient in not negotiating a favorable plea bargain, or adequately advising him of the possible benefits to pleading guilty. The Court stated: "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Id.* at 1387. However, in *Lafler*, and the cases discussed therein, the Supreme Court notes that ineffective

assistance of counsel may be found where a § 2255 petitioner was actually offered a plea bargain prior to going to trial, and, on the advice of counsel, rejected the plea bargain. The Court notes, "[i]t is, of course, true that defendants have 'no right to be offered a plea . . . nor a federal right that the judge accept it.' In the circumstances here, that is beside the point. If no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here simply does not arise." *Lafler*, 132 S. Ct. at 1387 (quoting *Missouri v. Frye*, 132 S. Ct. 1399, 1410 (2012)). Here, there is no indication in the record that the Government was willing to negotiate a more favorable sentence in exchange for Sturdivant pleading guilty.

Moreover, as Horak notes, she was prohibited by court order from providing Sturdivant with copies of any discovery documents provided by the Government. Cr. Doc. No. 21 at 8. Additionally, Horak states that after she reviewed the discovery file, she warned Sturdivant that his codefendants might testify against him. Horak Aff. 3. Horak recalls that Sturdivant was adamant about his decision to go to trial. Horak states:

> I do recall telling him that I felt the evidence was against him, but he had a bravado about the charges, and he was convinced he would be found not guilty. His bravado was so great that even after sitting through the trial he believed he had won an acquittal. While the jury was deliberating, he asked me to give him my suit jacket so he could hang it on the wall as a trophy.

Horak Aff. 3. Horak states: "I do not think [Sturdivant would have accepted] anything short of a misdemeanor, an offer of time served or a dismissal." *Id.* at 4.

Sturdivant has failed to show that Horak's performance was deficient with regard to his discovery file. He has also failed to show that he suffered prejudice within the meaning of *Strickland* due to any such alleged deficiency.

###### b. *Alleged failure to file motion to sever case from co-defendants*

Sturdivant argues that Horak was ineffective for failing to file a motion to sever his trial from his codefendants, as he claims he requested. He alleges that he suffered

the "prejudicial spillover" from evidence presented against his codefendants. Pet. Br. 19. Sturdivant argues that if his trial had been severed, much of the testimony levied against his codefendants regarding the manufacturing of cocaine would have been inadmissible. Pet. Br. 21. He points to several excerpts of testimony about his codefendants' manufacture of cocaine and asserts that while there was testimony that he was present during the manufacture of cocaine, there was no specific testimony that he engaged in such manufacturing.

Federal Rule of Criminal Procedure 8(b) states: "The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately." Sturdivant was charged with being a member of a conspiracy to manufacture and distribute powder and crack cocaine with three other codefendants. "'Generally, persons charged in a conspiracy should be tried together, especially when proof of the charges against the defendants is based upon the same evidence and acts. Motions to sever rest in the sound discretion of the trial court and the denial of such motions is not grounds for reversal unless clear prejudice and abuse of discretion are shown.'" *United States v. Washington*, 318 F.3d 845, 858 (8th Cir. 2003) (quoting *United States v. Arenal*, 768 F.2d 263, 267-68 (8th Cir. 1985)). "Severance may only be granted upon defendant's showing of real prejudice." *Id.* (citations omitted).

A defendant can demonstrate real prejudice to his right to a fair trial by showing (a) his defense is irreconcilable with that of his codefendant or (b) the jury will be unable to compartmentalize the evidence as it relates to separate defendants. *Id.* Under *Strickland*, there is a presumption that the attorney's representation was competent and that the challenged decisions constituted permissible strategic tactical choices of counsel. *Strickland*, 466 U.S. at 689. "To obtain relief for his trial counsel's failure to request separate trials, [Sturdivant] must show that such failure 'rendered the trial fundamentally unfair.'" *United States v. Siepker*, No. C01-3057-MWB, 2008 WL 5273088, at *11

(N.D. Iowa Dec. 18, 2008) (quoting *Hollins v. Department of Corrections*, 969 F.2d 606, 608 (8th Cir. 1992)).

Horak states that she did not make a motion to sever because she believed such a motion would have no merit.  Horak Aff. 4.  There can be no prejudice if a motion for severance would have been denied if filed.  *See United States v. Davidson*, 122 F.3d 531, 538 (8th Cir. 1997).  Nothing in the record nor in the relevant case law suggests that severance was appropriate in this case.  Moreover, Horak's choice to not file a motion to sever falls well within the range of permissible strategic tactical choices afforded to counsel under *Strickland*.  Sturdivant cannot show deficient performance or prejudice on this issue.

### c.  *Alleged failure to correct erroneous/defective jury instructions numbers 6, 9, and 14*

Sturdivant's argues that Horak was ineffective for failing to object to jury instruction numbers 6, 9 and 14.  His argument is closely tied to his argument that Horak was ineffective for failing to sever his trial from his codefendants.  As discussed further below, these instructions addressed matters Sturdivant maintains would have been inadmissible if he had been the sole defendant.  Pet. Br. 22-29.

Jury instructions involve questions of law and Sturdivant has the burden of showing that the instructions used constituted a fundamental defect that resulted in a miscarriage of justice.  *See Robinson v. LaFleur*, 224 F.3d 950, 954 (8th Cir. 2000).  "Habeas corpus relief may be granted only when an erroneous jury instruction constituted a fundamental defect that resulted in a complete miscarriage of justice, or an omission inconsistent with rudimentary demands of a fair trial" *Louisell v. Director of Iowa Dept. of Corrections*, 178 F.3d 1019, 1022 (8th Cir. 1999).

Instruction number 6 included a statement that each codefendant begins the trial with the presumption of innocence, the government must overcome this presumption

beyond a reasonable doubt as to each essential element of the crime charged, and that each defendant is entitled to be treated separately. It also stated:

> The charges in this case are as follows:
>
> Under Count 1, the Indictment charges that from about 2001 through November 2004, the defendants, Tyrone Sturdivant, a/k/a "Big D"; Mario Covington, Jason Morrisette, and Colleen Armatis, committed the crime of conspiracy to manufacture and distribute 50 grams or more cocaine base, commonly called "crack cocaine" and to distribute cocaine salt, commonly called "powder cocaine."

Cr. Doc. No. 94, p. 8. Sturdivant alleges that this instruction was flawed because there was no evidence that he manufactured cocaine base or crack cocaine.

> Instruction number 9 stated:
>
> The crime of conspiracy as charged in Count 1 of the Indictment, has three essential elements, which are:
>
> *One,* between about 2001 through November 2004, two or more persons reached an agreement or came to an understanding to manufacture and distribute 50 grams or more cocaine base, commonly called "crack cocaine" and distribute cocaine salt, commonly called "powder cocaine";
>
> *Two,* each defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and
>
> *Three,* at the time that each defendant joined in agreement or understanding, he or she knew the purpose of the agreement or understanding.
>
> For you to find the defendant guilty of this crime, the Government must prove all of these essential elements beyond a reasonable doubt as to that defendant; otherwise, you must find the defendant guilty.

Cr. Doc. No. 94, p. 15. Sturdivant argues that Horak's failure to correct this allegedly-defective jury instruction "allowed the government to convict petitioner of manufacture which [con]tained the distribut[ion] of cocaine base count without evidence beyond a

reasonable doubt denying petitioner Due Process & Equal Protection of a fair trial." Pet. Br. 26.

Finally, instruction number 14 stated:

One of the offenses alleged to be an objective of the conspiracy involved specific quantities of cocaine base, commonly called "crack cocaine." The prosecution does not have to prove that the conspiracy offense involved the amount or quantity of cocaine base, commonly called "crack cocaine," charged in the Indictment. However, if you find a defendant guilty of the "conspiracy" offense charged in **Count 1,** then you must also determine the following matters beyond a reasonable doubt: (1) whether or not the "conspiracy" offense involved the cocaine base, commonly called "crack cocaine," as alleged in the Indictment, and if so, (2) the total quantity, in grams, of cocaine base, commonly called "crack cocaine," involved in that offense for which each defendant can be held responsible. In so doing, you may consider all of the evidence in the case that may aid in the determination of these issues.

### *Responsibility*

A defendant guilty of conspiracy to manufacture cocaine base, commonly called "crack cocaine," is responsible for the quantities of cocaine base, commonly called "crack cocaine," that he actually manufactured or agreed to manufacture. Such a defendant is also responsible for those quantities of cocaine base, commonly called "crack cocaine," that fellow conspirators manufactured or agreed to manufacture, if you find that the defendant could have reasonably foreseen, at the time that he joined the conspiracy or while the conspiracy lasted, that those prohibited acts were a necessary or natural consequence of the conspiracy.

Similarly, a defendant guilty of conspiracy to distribute cocaine base, commonly called "crack cocaine," is responsible for quantities of the cocaine base, commonly called "crack cocaine," that he or she actually distributed or agreed to distribute, if you find that a defendant could have reasonably foresee, at the time that he or she joined the conspiracy or while the conspiracy lasted, that those prohibited acts were a necessary or natural consequence of the conspiracy.

### *Determination of quantity and verdict*

You must determine the total quantity of cocaine base, commonly called "crack cocaine," for which each defendant can be held responsible. You must then indicate in the Verdict Form the range within which that total

quantity falls. Thus, if you find a defendant guilty of the conspiracy offense and that the conspiracy involved cocaine base, commonly called "crack cocaine," you must determine beyond a reasonable doubt whether that defendant can be held responsible for 50 grams or more, 5 grams or more but less than 50 grams, or less than 5 grams of cocaine base, commonly called "crack cocaine.". . .

Cr. Doc. No. 94, p. 22.

Sturdivant has demonstrated neither deficient performance of counsel nor prejudice with regard to any of these instructions. Horak made a Rule 29 motion at the close of the Government's case, arguing that there was not sufficient evidence to show that Sturdivant was involved in a conspiracy to either manufacture or distribute cocaine base or distribute cocaine salt. Horak stated, "I don't recall evidence of manufacturing." Trial Tr. 1376 (Cr. Doc. No. 123-5). She also stated:

> Judge, I don't think that there is sufficient evidence here pursuant to the allegation in Count 1 that my client was involved in a conspiracy to either manufacture or distribute cocaine base or to distribute cocaine salt, period. All of the testimony placed my client at best in the area or in the room. No one made a buy specifically from him. There is no evidence that he was at all heard on any of the tapes, and we believe that any evidence provided by the confidential informants in this case are so ridiculously incredible that we believe that the judge – this Court should order a judgment of acquittal on Count 1.

Trial Tr. 1347-48. The court denied the Rule 29 motion. Additionally, Horak objected to the jury instructions including a manufacturing charge against Sturdivant, again arguing a lack of evidence on that charge. Trial Tr. 1376. The court overruled the objection. Sturdivant's claim of ineffective assistance of counsel with regard to the court's jury instructions is without merit.

### d.   *Alleged failure to object to prosecutorial misconduct during trial*

To determine whether Sturdivant's counsel was ineffective in failing to object to alleged prosecutorial conduct, I first examine how the Eighth Circuit has defined prosecutorial misconduct: "'[A] two-part test determines whether prosecutorial misconduct has occurred: first, the prosecutor's conduct or remarks must have been improper, and second, the remarks or conduct must have prejudicially affected the defendant's substantial rights by depriving the defendant of a fair trial.'" *Graves v. Ault*, 614 F.3d 501, 507 (8th Cir. 2010) (quoting *United States v. White*, 241 F.3d 1015, 1023 (8th Cir. 2001)). "Even if one or more of the comments was improper, reversal 'is appropriate only when [the court] determine[s] that the jury verdict reasonably could have been affected by the improper comment.'" *Id.* (quoting *United States v. Peyro*, 786 F.2d 826, 831 (8th Cir. 1986)). District courts must consider three factors to determine whether prosecutorial misconduct deprived the defendant of a fair trial. *Id.* at 508. First, consider the cumulative effect of the misconduct. Second, examine the strength of the properly admitted evidence of the defendant's guilt. Last, review the curative actions taken by the court. *Id.* (quoting *United States v. Beeks*, 224 F.3d 741, 745 (8th Cir. 2000)).

### i.   *Alleged failure to object to perjured testimony of Travis Ulrich*

Sturdivant argues four points to support his allegation that the Government knowingly presented perjured testimony from Travis Ulrich and that Horak improperly failed to object to this "prosecutorial misconduct." First, he argues that Horak failed to object to Ulrich's testimony that he signed a limited immunity agreement. Pet. Br. 30. Sturdivant argues that Horak failed to discover this because she failed to obtain and review grand jury transcripts and related discovery to dispute this false testimony. *Id.* at 31. Second, Sturdivant argues that a comparison of Ulrich's testimony regarding the

ratio of powder to crack cocaine at trial is inconsistent with his grand jury testimony. Pet. Br. 32. Third, Sturdivant alleges that no evidence was presented at trial that he was present during the manufacture of crack cocaine and that Horak was aware of this lack of evidence but did nothing to object to this "prosecutorial misconduct." Pet. Br. 35-36. Fourth, Sturdivant argues that it was improper for the AUSA to refer to Ulrich's testimony in his closing argument because it was perjured or, at least, totally lacking in credibility. Pet. Br. 37.

Horak did object to Ulrich's testimony on several occasions. At the court's first sidebar after Ulrich began testifying, Horak objected that Ulrich's testimony regarding the conspiracy should not fall within the exception for coconspirator statements. Trial Tr. 426-28. At a second sidebar, Horak objected to the Government's failure to produce the written plea agreement (after Ulrich testified he had signed one) and to the Government's failure to produce copies of Ulrich's criminal history. Trial Tr. 435-43. Moreover, as noted above, Horak objected to the jury instructions regarding the manufacturing charge and made a Rule 29 Motion at the close of the AUSA's case on the same basis. The record clearly refutes Sturdivant's claim that Horak was ineffective by failing to object to alleged "prosecutorial misconduct" regarding Ulrich's testimony.

>     ii.    *"Trial counsel agreed to prosecutorial misconduct"*
>            *by permitting "introduction of Bremer County, Iowa*
>            *evidence"*

Sturdivant argues that Horak "agreed to prosecutorial misconduct" by permitting introduction of evidence concerning his Bremer County, Iowa, offense. Pet. Br. 41. Before trial, Horak filed a Motion in Limine to exclude evidence of prior arrests and/or criminal convictions and evidence of drugs of the type not charged in the indictment. Cr. Doc. No. 72. A hearing was held on June 28, 2005, but ruling on the motion was reserved until trial. Cr. Doc. No. 82. At trial, outside the presence of the jury, Horak again argued the evidence of the Bremer County conviction should be excluded under

Federal Rule of Evidence 404(b). Trial Tr. 30-36 (Doc. No. 123-2). The court agreed and ruled the Government could not mention the *conviction* but could offer evidence of the underlying conduct because it occurred during the alleged conspiracy. Trial Tr. 35-36, 796-99; *see also* Goff Aff. 5. While Sturdivant obviously disagrees with the district court's ruling, the record clearly refutes his claim that Horak did not attempt to exclude evidence of the Bremer County offense.

### e. Alleged failure to inform Sturdivant of error in unanimous jury verdict after contact with jurors

Sturdivant alleges that Horak was constitutionally deficient in her "failure to inform petitioner of error in unanimous jury verdict after contact with jurors." Pet. Br. 49. Sturdivant makes this argument based on an exchange between a single juror and the court during the jury polling process. *Id.* The trial transcript clearly indicates that the court had difficulty hearing a juror's response to being polled. Trial Tr. 1493. Sturdivant argues that this exchange calls into question the unanimity of the jury verdict. A simple review of the transcript shows that this argument is absurd.

### 3. Robert Sikma (first sentencing/appellate counsel)
### a. Alleged failure of to ensure adequate access to discovery file

Sturdivant argues, again, that his attorney was constitutionally deficient in not providing him with unrestricted access to his entire discovery file. Pet. Br. 52. For the same reasons stated above with regard to Horak, I find that this claim is without merit.

### b. Alleged failure of to conduct an adequate investigation into prior offenses in Michigan, Illinois and Iowa

The essence of Sturdivant's claim regarding Sikma's failure to conduct an adequate investigation into his prior Michigan, Illinois and Iowa convictions stem from Sikma's unwillingness to relitigate these underlying offenses. Pet. Br. 55-65. Additionally,

Sturdivant argues that Sikma's failure to request continuances supports a claim for ineffective assistance of counsel. Pet. Br. 56. Alternatively, Sturdivant's pleading could be interpreted to allege constitutionally deficient representation by the unnamed attorney who represented Sturdivant with regard to the Michigan offense. Sturdivant also argues that the Michigan statute under which he was convicted was constitutionally defective or that his underlying conduct was not properly charged under the statute. Pet. Br. 55-65. Specifically, Sturdivant alleges Sikma and/or the Michigan lawyer were ineffective in (a) failure to notify him of the statutory language of Michigan Compiled Law 333.74012A4[A] (Pet. Br. 57); (b) advising him to plea to a nonexistent offense (Pet. Br. 60); (c) failure to conduct an adequate investigation into the prior Iowa offense (Pet. Br. 65); (d) failure to adequately investigate and have government produce witnesses and proper court records for the Van Buren County, Michigan and Lake County, Illinois offenses (Pet. Br. 69); (e) failure to "adequately preserve issues concerning geographic matters" in Van Buren, Missouri, being mistaken for Van Buren County, Michigan (Pet. Br. 75). All of these contentions are baseless.

Sturdivant's original sentencing hearing was scheduled for December 19, 2005. Cr. Doc. No. 134. Sikma moved for a continuance of the sentencing date until after January 3, 2006. Cr. Doc. No. 149. The court rescheduled the sentencing for April 6, 2006. Cr. Doc. No. 160; *see also* Cr. Doc. No. 155. Sikma filed a sentencing memorandum on behalf of Sturdivant, addressing the applicability of the 18 U.S.C. § 3553(a) factors and arguing against the § 851 enhancement. Cr. Doc. No. 192. The court continued sentencing for an additional day to review the additional filings and case law before the sentencing hearing. Cr. Doc. No. 199. The court then continued the hearing again and ordered both parties to brief the additional issues. Cr. Doc. No. 201.

Sikma filed an addendum to his sentencing brief arguing against the inclusion of Sturdivant's Bremer County conviction. Cr. Doc. No. 234. During a hearing on June 8, 2006, the court again continued Sturdivant's sentencing to permit the parties to attempt to work out an agreement before sentencing and scheduled a status conference for August

11, 2006. Cr. Doc. No. 242, 247. The sentencing was continued four more times before being completed on October 26, 2006. As detailed above, the court ultimately held that neither the Bremer County, Iowa, conviction, nor Van Buren County, Michigan, conviction could be used under § 851. There is absolutely no merit to Sturdivant's argument that Sikma was ineffective for failing to seek continuances and/or to adequately investigate the prior convictions.

Sturdivant's other claims, seemingly against the attorney who represented him in his 1991 Van Buren County, Michigan, case, are procedurally barred. "'This is a classic case of a litigant impermissibly attempting to relitigate the same claim . . . in violation of well established principles of res judicata . . . .'" *United States v. Summage*, 575 F.3d 864, 871 (8th Cir. 2009) (quoting *United States v. Stuart*, 689 F.2d 759, 762 (8th Cir. 1982)). Sturdivant cannot relitigate a 1991 Michigan drug conviction that later served as an underlying drug offense for his § 851 enhancement. Nor may Sturdivant merely reallege claims in a § 2255 petition that were raised and rejected by the Eighth Circuit on direct appeal. In short, Sturdivant's ineffective assistance claims against Sikma (and against his Michigan attorney) are without merit.

### 4.    *Eric W. Butts (Second Appellate Counsel)*

Sturdivant raises two claims against Butts, who was appointed to represent him on appeal after his first appellate counsel, Sikma, died before argument. Pet. Br. 78-86. The first argument, which alleges a failure to provide Sturdivant with adequate access to the discovery file, is without merit for reasons addressed above with regard to other attorneys. The other claim raises Butts' failure to "argue and raise on appeal issues concerning geographic matter[s]." Pet. Br. 81. This seems to be an argument that Butts should have raised the inapplicability of the Van Buren County, Michigan, offense under § 851. As addressed above, however, the district court had already concluded that this offense could not be used as a prior conviction for a § 851 enhancement because the Government's initial § 851 notice mistakenly made reference to Missouri, not Michigan.

Thus, the district court did not use that offense against Sturdivant at sentencing. Under these circumstances, there was no reason for Butts to raise this issue on appeal. Sturdivant's argument is without merit.

### 5. Stefanie Martinez (first resentencing counsel)
#### a. Alleged failure to ensure adequate access to discovery file

Sturdivant raises two claims against Stefanie Martinez. First, that she failed to provide Sturdivant adequate access to discovery and, second, that Martinez failed to adequately investigate and argue his Van Buren County, Michigan, offense at Sturdivant's first resentencing. Pet. Br. 84. Again, the first claim is baseless for reasons discussed above with regard to other attorneys.

As for the second claim, Sturdivant argues both (a) that Martinez proceeded to his first resentencing while being unprepared to argue sentencing enhancement issues and (b) that it was improper for Martinez to raise those same sentencing enhancement issues. Pet. Br. 84-86. These arguments appear to be internally inconsistent. Moreover, Sturdivant ignores the fact that the Eighth Circuit ordered the district court to apply the Van Buren County, Michigan, conviction through a § 851 enhancement. *Sturdivant I*, 513 F.3d at 804. He does not explain what, if anything, Martinez could have done to persuade the district court to disregard the appellate court's directive.

Sturdivant also seems to argue that Martinez was ineffective for failing to attempt to relitigate his 1991 Michigan conviction. For the same reasons discussed above with regard to Sikma, Sturdivant can show no prejudice from Martinez's alleged failure to adequately investigate that conviction. Martinez could not have relitigated a state conviction that occurred almost twenty years prior. This claim, too, is without merit.

### 6. Michael Smart (second resentencing counsel)

Sturdivant contends Smart was constitutionally deficient in failing to give him unhindered and unlimited access to all discovery materials in his case file. Pet. Br. 88.

33

For the same reasons stated above, this claim is without merit. Additionally, Sturdivant alleges that Smart's performance was deficient because he failed to investigate the prior convictions upon which Sturdivant's § 851 enhancement were predicated. Pet. Br. 91-111. Again, for the reasons stated above, this claim is without merit.

### C. Cumulative Error Review

Although Sturdivant concedes that he finds the state of the law regarding a § 2255 claim for "cumulative error" bewildering, he argues that he should be granted relief on this basis. Pet. Br. 111-14. The Eighth Circuit has repeatedly rejected the cumulative error theory of post-conviction relief. *See, e.g., Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006), *cert. denied*, 549 U.S. 1134 (2007). Therefore, this claim is without merit.

### D. Constitutional Claims

#### 1. Sturdivant's sentence to life under §§ 841(b)(1)(A), 846, and 851 violates the Fifth Amendment Due Process and Equal Protection Clauses

Sturdivant argues that his life sentence under §§ 841(b)(1)(A), 846, and 851 violates the Fifth Amendment Due Process and Equal Protection Clauses. Pet. Br. 114. Essentially, Sturdivant claims that his pre-Fair Sentencing Act sentencing violated his constitutional rights and argues that the Fair Sentencing Act should be applied retroactively to his case. Pet. Br. 117-18. Sturdivant's appellate counsel raised this issue in the *Anders* brief filed in support of Sturdivant's second appeal and the Eighth Circuit expressly rejected it. *See Sturdivant II*, 420 Fed. Appx. 651 (8th Cir. 2011) (unpublished) (citing *United States v. Fenner*, 600 F.3d 1014, 1024–25 (8th Cir. 2010)). As such, this claim is procedurally barred. *Theus*, 611 F.3d at 449; *Bear Stops*, 339 F.3d at 780.

## 2. Alleyne *Issue*

Sturdivant argues that his "5th amendment jury trial right to place 'prior offenses' in the indictment and prove to the jury beyond a reasonable doubt was violated." Pet. Br. 118. This argument fails for two reasons.

First, and most importantly, the Supreme Court recognizes a "prior conviction" exception to the rule that certain facts affecting the penalty for a crime must be submitted to the jury. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *see also United States v. Evans*, 738 F.3d 935, 936 (8th Cir. 2014) (per curiam) ("'[T]he government is not required to charge the fact of a prior conviction or prove it to a jury.'") (quoting *United States v. Ramsey*, 498 Fed. Appx. 653, 654 (8th Cir. 2013) (per curiam) (unpublished)). The Court later expanded the scope of *Apprendi* to include facts that increase the statutory mandatory minimum sentence, not just the maximum sentence. *Alleyne v. United States*, 133 S. Ct. 2151, 2162-63 (2013). However, the Court did not eliminate the "prior conviction" exception. *See, e.g., United States v. Abrahamson*, 731 F.3d 751, 752 (8th Cir. 2013) (per curiam) ("[T]he Court in *Alleyne* left intact the rule that enhancements based on the fact of a prior conviction are an exception to the general rule that facts increasing the prescribed range of penalties must be presented to a jury."). Thus, Sturdivant had no right to have the issue of his prior convictions submitted to the jury.

Second, even if *Alleyne* somehow eliminated the "prior conviction" exception, that case does not apply retroactively. At the time of Sturdivant's sentencing in 2005, controlling Supreme Court precedent held that the Constitution permitted a judge to find, by a preponderance of the evidence, any fact that increased the mandatory minimum sentence for a crime. *See Harris v. United States*, 536 U.S. 545, 568-69 (2002); *accord United States v. Serrano-Lopez*, 366 F.3d 628, 638 (8th Cir. 2004). "On June 13, 2013, the Supreme Court overruled *Harris* in *Alleyne*, holding that any fact that increases the

mandatory minimum sentence must be submitted to a jury and found beyond a reasonable doubt." *Walker v. United States*, 810 F.3d 568, 573 (8th Cir. 2016). In *Walker,* the Eighth Circuit considered whether *Alleyne* should apply retroactively and determined that it should not. *Id.* at 573-80.

For these reasons, Sturdivant's argument that the fact of his prior convictions should have been submitted to and decided by the jury is entirely without merit.

### 3.    *Section 851 Enhancement*

Sturdivant argues that the Government's filing of the § 851 notice in 2005 was contrary to charging policies issued by the United States Department of Justice (DOJ) in 2013. Pet. Br. 123-24. This argument is nonsense. Sturdivant cites no authority suggesting that the § 851 enhancement violated any DOJ policy that existed at the time it was filed. Nor does he cite authority suggesting that the policies announced by the DOJ in 2013 should be applied retroactively, thus permitting collateral attacks on § 851 decisions made by the Government years earlier.

Congress did not enact § 2255 to provide defendants with an additional appeal of judgment. *United States v. Frady*, 456 U.S. 152, 165 (1982); *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (stating that "habeas relief is an extraordinary remedy which 'will not be allowed to do service for an appeal'") (quoting *Bousley v. United States*, 523 U.S. 614, 621 (1998)). As a post-judgment, collateral remedy, § 2255 relief is severely limited in scope because after "the defendant's chance to appeal has been waived or exhausted, [courts] are entitled to presume [the petitioner] stands fairly and finally convicted." *Frady*, 456 U.S. at 164. Here, Sturdivant's reliance on the DOJ's 2013 policies is baseless and does not give rise to any nonfrivolous argument for habeas relief.

### 4. Tenth Amendment Violation

Finally, Sturdivant appears to argue that his Tenth Amendment rights were violated because he was convicted and sentenced in federal court, which amounted to an interference with Iowa's state sovereignty. Pet. Br. 128. Sturdivant also appears to argue that 21 U.S.C. §§ 841, 846 and 851 violate the Tenth Amendment. Pet. Br. 130. Sturdivant's argument is essentially one for a change of venue or challenge to jurisdiction. He states, "Count 1 should be reversed and petitioner remand[ed] for resentencing because the State of Iowa heavily regulates drug charges under [the] Iowa Code. . ." Pet. Br. 129.

Issues that could have been raised on appeal, but were not, cannot be raised for the first time on a § 2255 motion. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *Frady*, 456 U.S. at 165. To the extent Sturdivant is alleging venue was improper, the claim fails because venue "is not subject to collateral attack under 2255." *Entrekin v. United States*, 508 F.2d 1328, 1330 (8th Cir. 1974). In any event, the Eighth Circuit has held that Congress validly exercised its power under the Commerce Clause when it enacted the Controlled Substances Act. *See United States v. Davis*, 288 F.3d 359, 362 (8th Cir. 2002) (noting that the Controlled Substances Act of 1970, 21 U.S.C. §§ 801-904, "is a valid exercise of Congressional power under the commerce clause").

"A Tenth Amendment challenge to a statute necessarily fails if the statute is a valid exercise of a power relegated to Congress." *United States v. Louper-Morris*, 672 F.3d 539, 563 (8th Cir. 2012) (quotation omitted). Pursuant to *Davis,* the federal courts have jurisdiction over crimes which fall under the Controlled Substances Act. Sturdivant's argument fails.

### E. Certificate of Appealability

Sturdivant must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability in this case. *See Miller-El v. Cockrell*, 537 U.S. 322 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000);

*Mills v. Norris*, 187 F.3d 881, 881 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the Supreme Court reiterated in *Mill-El v. Cockrell*, 537 U.S. 322 (2003), that "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

I find that Sturdivant's § 2255 motion does not present questions of substance for appellate review, and therefore, does not make the requisite showing to satisfy § 2253(c). *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Accordingly, I decline to grant a certificate of appealability with regard to any of Sturdivant's claims. *See Tiedeman v. Benson*, 122 F.3d 518, 520-22 (8th Cir. 1997). Should Sturdivant wish to seek further review of his motion, he may request a certificate of appealability from a judge of the United States Court of Appeals for the Eighth Circuit. *See Tiedman v. Benson*, 122 F.3d 518, 520-22 (8th Cir. 1997).

## III.  CONCLUSION

"[A] petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief," no hearing is required "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based."

*New v. United States*, 652 F.3d 949, 954 (8th Cir. 2011) (quoting *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008)). Sturdivant has raised no issues that require a hearing. His 39 claims for relief are all denied as procedurally barred or clearly refuted by the record and without merit. As such:

1.     Petitioner Tyrone Sturdivant's November 5, 2012, Motion (Doc. No. 1) Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is **denied in its entirety**;

2.     this matter is **dismissed in its entirety**; and

3.     no certificate of appealability will issue for any claim in this case.


**IT IS SO ORDERED**.

**DATED** this 31st day of March, 2016.


_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE